**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **HOPE 7 MONROE STREET LIMITED PARTNERSHIP,** | |
| **Appellant,** | |
| **v.** | **Civil Action No. 11-1455 (JEB)** |
| **RIASO L.L.C.,** | |
| **Appellee.** | |

**MEMORANDUM OPINION**

Hope 7 Monroe Street Limited Partnership ("Monroe") owned property in the District of Columbia that it wished to convert from apartment units to condominiums. A man named Musse Leakemariam brokered a $1.6 million "bridge loan" from RIASO L.L.C. to provide Monroe with temporary financing. Although Leakemariam promised to assist Monroe in finding permanent financing before the expiration of the bridge loan's term, he failed to do so, and Monroe, apparently unable to secure additional financing, defaulted on the loan from RIASO. It subsequently filed for bankruptcy in the United States Bankruptcy Court here, and a trustee was appointed to administer the bankruptcy estate.

Meanwhile, Monroe's sole limited partners obtained information that led them to believe that Leakemariam, RIASO, and RIASO's attorney had engaged in fraud and misrepresentation in connection with the bridge loan. They filed suit, individually and on behalf of Monroe, against these three in D.C. Superior Court. As the trustee was responsible for protecting the interests of the bankruptcy estate, he ultimately assumed control of the Superior Court action. He subsequently proposed a settlement in which the estate would sell any and all claims it had

1

against the three defendants to RIASO's attorney.  The Bankruptcy Court approved the sale of the claims for $30,000.  In addition, it ordered that Monroe's property be sold and the proceeds be paid to RIASO to satisfy its outstanding obligation.

After these orders were issued, Monroe believed it discovered additional evidence of fraud in connection with the bridge loan and thus moved to vacate the aforementioned orders. The Bankruptcy Court denied the Motion, and Monroe now appeals that decision.  Because this Court finds that the Bankruptcy Court did not err in refusing to vacate its orders under Federal Rules of Civil Procedure 60(b)(2), (3), and (6), this Court will affirm.

## I.      Background

### A.  Factual Background

For background purposes, the Court will refer to the Superior Court Complaint, which was part of the record in the underlying bankruptcy case.  The Court recognizes that the Bankruptcy Court did not make findings of fact with respect to many of the allegations in the Complaint and, therefore, cites them only for context, not for their truth.  With that caveat, the Court begins with the property itself.  Hope 7 Monroe Street Limited Partnership owned a building at 1020 Monroe St., N.W.  See Bankruptcy Record (B.R.) at 33 (Superior Court Complaint).  The property was "slated for development and conversion from an apartment building to condominium units."  Id.  Lenan and Pauline Cappel, the limited liability partners of Monroe, were persuaded by Musse Leakemariam that he could obtain refinancing for the partnership's mortgage on the property that would serve as a "bridge loan … until permanent construction financing became available."  Id. at 33-34.  Leakemariam also promised to assist Monroe in securing permanent financing before the bridge loan's term expired.  Id. at 37-38. After Monroe accepted his offer to broker the loan, Leakemariam arranged through his attorney

for RIASO L.L.C. to lend $1.6 million to Monroe.  Id. at 38.  The Cappels guaranteed the loan.  Id. at 34, 36.[1]

Unbeknownst to Monroe and the Cappels, however, Leakemariam was allegedly both the loan broker and the lender.  Id. at 35.  He had purportedly organized RIASO himself on November 16, 2006 – "less than a week before the settlement on the new mortgage loan."  Id. at 35, 37.  Monroe and the Cappels did not learn of Leakemariam's dual role until August 17, 2009.  Id. at 41.  For reasons that are not entirely clear, Monroe was unable to repay the bridge loan, leading to its default and the litigation that brings the parties here.

B.  Procedural History

After RIASO initiated foreclosure proceedings on the mortgage, id. at 40, Monroe filed a voluntary petition for bankruptcy under Chapter 11 of the Bankruptcy Code.  See ECF No. 2 (Docket Sheet for Bankruptcy Petition 09-00273, ECF No. 1, April 2, 2009); see also B.R. at 33. The Bankruptcy Court converted the case to a Chapter 7 action on July 17, 2009, appointing Marc Albert as the trustee.  See Bankruptcy Docket Sheet, ECF No. 57.  On November 6, 2009, the Cappels filed a separate action against RIASO, Leakemariam, and Richard Boddie (RIASO's attorney) in D.C. Superior Court for breach of fiduciary duty, fraud, and misrepresentation, among other things.  B.R. Record at 32-54 (Superior Court Complaint).

On January 15, 2010, the trustee filed a motion in the bankruptcy action to sell the debtor's property located at 1020 Monroe St., N.W., see Bankruptcy Docket Sheet, ECF No. 68, which the court granted on February 17.  Id., ECF No. 83.  Debtor, meanwhile, objected to RIASO's proof of claim, stating that Monroe did not "admit to owing any amount that is the

---

[1] A D.C. nonprofit corporation called Hope 7, Inc. was the general partner of Monroe but ceased performing its general-partner functions in 2006 before the loan was finalized.  Its corporate charter was revoked in 2007.  See B.R. at 33.

result of the fraudulent inducement to contract and breach of fiduciary duty committed against the debtor." See B.R. at 365 (Memorandum Decision of July 1, 2011, re Debtor's Rule 60(b) Motion at 3); Bankruptcy Docket Sheet, ECF No. 81.  After a hearing on May 25, 2010, the court overruled Monroe's objection to the proof of claim.  See Bankruptcy Docket Sheet, ECF Nos. 110, 112.

Then, on June 10, 2010, the trustee moved to sell the estate's claims against RIASO to Boddie for $15,000 "as a compromise of the claims."  Id., ECF No. 114.  The proposed sale would consist of all of the estate's claims against RIASO, including those claims that were being asserted by the Cappels in Superior Court.  Id.; B.R. at 240 (Trustee's Report of Sale), 365 (Mem. Dec. at 3).  At a hearing on the proposed settlement on June 30, 2010, the court authorized the trustee to sell the claims in a bidding war.  See Bankruptcy Docket Sheet, ECF No. 122; B.R. at 366 (Mem. Dec. at 4).  Boddie's offer of $30,000 prevailed, and the court approved the sale of the claims to him on July 8, 2010.  See Bankruptcy Docket Sheet, ECF No. 123; B.R. at 237-38 (Order to Approve Transfer of Interest as Compromise of Controversy at 2-3).

On April 12, 2011, Debtor moved pursuant to Federal Rule of Civil Procedure 60(b) to vacate three of the Bankruptcy Court's orders: the order approving the sale of the estate's claims to Boddie, the order overruling the objection to RIASO's proof of claim, and the order requiring proceeds from the sale of Debtor's real property to be paid toward RIASO's claim.  See Bankruptcy Docket Sheet, ECF No. 146; B.R. at 366 (Mem. Dec. at 4).  The Bankruptcy Court denied the Motion on July 1 of the same year.  See Bankruptcy Docket Sheet, ECF No. 155. This Court now considers Debtor's appeal of the Bankruptcy Court's ruling on the Rule 60(b) motion.

## II.    Legal Standard

A bankruptcy court's findings of fact are reviewed under a "clearly erroneous" standard. Fed. R. Bankr. P. 8013 ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses."). A showing that "another conclusion could have been reached" is not sufficient to meet this exacting standard. Advantage Healthplan, Inc. v. Potter, 391 B.R. 521, 537 (D.D.C. 2008). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 574 (1985) (citations omitted). In fact, even if the reviewing court "is convinced that it would have decided the case differently," it may not reverse the bankruptcy court on this basis. Id. at 573. "'To be clearly erroneous, a decision must … strike [the court] as wrong with the force of a five-week-old, unrefrigerated dead fish.'" In re Johnson, 236 B.R. 510, 518 (D.D.C. 1999) (quoting Parts & Elec. Motors, Inc. v. Sterling Elec., Inc., 866 F.2d 228, 233 (7th Cir. 1988)). By contrast, "a district court reviews questions of law de novo on appeal." See Advantage Healthplan, 391 B.R. at 537; In re Johnson, 236 B.R. at 518.

When a party appeals a bankruptcy court's approval of a settlement, the reviewing court must apply an "abuse of discretion standard." See In re Chira, 567 F.3d 1307, 1311 (11th Cir. 2009; In re Iridium Operating LLC, 478 F.3d 452, 461 n.13 (2d Cir 2007); In re Nutraquest, Inc., 434 F.3d 639, 645 (3rd Cir. 2006); In re Mailman Steam Carpet Cleaning Corp., 212 F.3d 632, 634 (1st Cir. 2000); Advantage Healthplan, 391 B.R. at 553. This standard "encompasses the clearly erroneous standard with respect to [a bankruptcy court's] findings of fact and the de novo standard with respect to [its] legal conclusions." Advantage Healthplan, 391 B.R. at 553 n.17. Thus, a bankruptcy court abuses its discretion when it "relies on clearly erroneous findings of

fact, fails to consider a relevant factor, or applies the wrong legal standard." Pigford v. Johanns, 416 F.3d 12, 23 (D.C. Cir. 2005).

## III.   Analysis

Debtor's Motion to vacate the Bankruptcy Court's orders relied on Federal Rules of Civil Procedure 60(b)(2), (3), and (6).  Debtor sought relief from all three of the Bankruptcy Court's orders – the orders approving settlement, approving RIASO's proof of claim, and directing proceeds from the sale of property to RIASO – under each of these provisions.  The same argument is renewed on appeal.  The Court will thus address the Bankruptcy Court's rulings under each of the Rule's subsections in turn.

### A.  Rule 60(b)(2)

Rule 60(b)(2) permits a court to relieve a party from a final order if the movant presents "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)."  The parties agree that to satisfy these requirements,

> the following criteria must be met: (1) the evidence must have been in existence at the time of trial; (2) the evidence must be such that it was not and could not by the exercise of due diligence have been discovered in time to present it in the original proceeding; (3) the evidence must not be merely cumulative or impeaching; and (4) the evidence must be admissible and credible, and of such a material and controlling nature as will probably change the outcome.

Lans v. Gateway 2000, Inc., 110 F. Supp. 2d 1, 4 (D.D.C. 2000) (quoting In re Korean Air Lines Disaster of Sept. 1, 1983, 156 F.R.D. 18, 22 (D.D.C. 1994)) (internal quotation marks omitted); see Appellant's Brief at 20-21; Appellee's Brief at 8.

According to Appellant, the new evidence presented to the Bankruptcy Court in its Rule 60(b) motion was that: (1) RIASO lacked a bank account, (2) RIASO did not capitalize the $1.6

million loan to Monroe, (3) RIASO did not file any taxes, (4) RIASO did not enter into any agreements with funders of the mortgage loan, and (5) Leakemariam managed RIASO. <u>See</u> Appellant's Brief at 21. This evidence, in Appellant's view, shows that RIASO was a sham corporation and "nullif[ies its] proof of claim." <u>See</u> Appellant's Br. at 26.  Arguing that all three orders at issue were premised on the legitimacy of RIASO and the validity of its proof of claim, Appellant contends that this Court should reverse the Bankruptcy Court's denial of its 60(b)(2) Motion to Vacate in light of this new evidence.

The Bankruptcy Court denied Debtor's 60(b)(2) Motion based on two of the Rule's requirements: that the evidence be outcome determinative and that it not be previously discoverable by the exercise of due diligence.  Although the court's opinion initially stated that the evidence presented would not have changed the outcome of any of the three orders, it proceeded to analyze only the order approving settlement under this prong.  Its due-diligence analysis, however, applies to all three orders.  This Court, correspondingly, will review only the order approving settlement under the outcome-determinative prong and all three under the due-diligence prong.

### 1. *Not Outcome Determinative*

The Bankruptcy Court rejected Debtor's 60(b)(2) argument with respect to approval of the settlement primarily because the "new evidence" offered would not have produced a different result.  It held that the evidence presented by Debtor "does not constitute 'newly discovered evidence' … because it is not 'of such a material and controlling nature as will probably change the outcome' of … the order granting the trustee's motion to sell the claim to Boddie."  B.R. at 371 (Mem. Dec. at 9).

In order to determine whether the Bankruptcy Court erred in finding that the evidence would not have altered the outcome, the Court must first examine the standard the Bankruptcy Judge was required to apply to the underlying motion.  The sale of the claims was a proposed settlement.  See B.R. at 194 (Trustee's Motion to Sell Claims at 4); see also Appellant's Br. at 11; Appellee's Br. at 16.  The judge's responsibility, therefore, was "not to decide the numerous questions of law and fact raised … but rather to canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" Cosoff v. Rodman (In re W.T. Grant Co.), 699 F.2d 599, 608 (2d Cir. 1983) (citation omitted) (emphasis added).  To do so, he was required to "apprise[ ] himself of all facts necessary for an intelligent and objective judgment as to whether [the] proposed compromise [was] fair and equitable," but he "need not hold a mini-trial."  Advantage Healthplan, 391 B.R. at 554 (internal quotations and citations omitted).  While the judge's decision about whether to approve the settlement should be informed, he should not "substitute [his] judgment for that of the trustee[;] … the trustee's judgment is to be accorded some deference."  Hill v. Burdick (In re Moorhead Corp.), 208 B.R. 87, 89 (1st Cir. B.A.P. 1997).

Before approving the settlement here, the judge held a hearing at which the trustee testified. The trustee explained that he believed selling the claims was in the best interest of the estate because of the uncertainty of damages and the costs associated with continued litigation. See B.R. at 372-73 (Mem. Dec. at 10-11) (citing Trans. 6/30/2010 Hrg., at 20-21, 26).  With respect to the former, the trustee stated that even if the estate were to prevail on the fraud claims, he had serious concerns about its ability to recover damages.  Mem. Dec. at 11 (citing Trans. 6/30/2010 Hrg., at 26, 68).  At the time the Debtor was originally seeking refinancing, its principal had been imprisoned, and it was "doubtful" that it "could have obtained a better

refinancing than the one that it did obtain." Id. (quoting Trans. 6/30/2010 Hrg., at 68).  In light

of this, even if the litigation were ultimately successful, it held little promise of bestowing

financial benefit on the estate.  Id.  This is because the measure of damages would be the

difference between a loan obtained with a conflict-free broker and the one brokered by

Leakemariam.  The trustee had good reason to think this amount would be negligible.

Not only were the prospects of gain dim, but the downside of litigating the case was

substantial and sure.  The trustee testified that the estate "'didn't have the resources to spend a

year litigating a fraud case.'"  Id. (quoting Trans. 6/30/2010 Hrg., at 20-21).  While Appellant

contends that the estate's litigation was being handled on a contingency-fee basis, see Appellant

Br. at 9, it does not cite any evidence in the bankruptcy record to support this.  Litigating the

claims through trial, moreover, would only delay distributions to the estate's creditors – as the

unresolved claims were the only thing standing between the estate's beneficiaries and their

money.  Mem. Dec. at 11-12 (citing Trans. 6/30/2010 Hrg., at 21, 67-68).

The trustee was not in the dark about the suspicious circumstances surrounding the loan

when he sought the Bankruptcy Court's approval for the settlement.  At the hearing regarding

approval, the trustee testified that he was aware that the loan money was transferred to the title

company through Boddie's account from an unknown source.  See Mem. Dec. at 12-13 (citing

Trans. 6/30/2010 Hrg., at 23-24).  He further testified that he did not know of any agreements in

which a third party promised to provide money for the loan.  Id.  Finally, he had heard reference

at a meeting of creditors that Leakemariam owned RIASO.  Mem. Dec. at 13 (quoting Trans.

6/30/2010 Hrg., at 23-24).  The trustee ultimately determined that the settlement was in the best

interest of the estate, even in light of the questionable origins of the loan.  Given these

circumstances, it was eminently reasonable for the court originally to approve a settlement that, in the trustee's reasonable judgment, would yield some gain without any litigation cost.

The new evidence, the Bankruptcy Court determined, would not have changed this outcome. Such a ruling is clearly not an abuse of discretion or clearly erroneous. Even if the evidence presented in Debtor's Motion to Vacate were to increase the estate's likelihood of prevailing in its Superior Court case – and it very well might – it does not undermine the trustee's rationale for selling the claims or the Bankruptcy Court's rationale for approving the settlement. The concerns about proving the amount of damages and bearing the costs of litigation and delay are unaffected by Debtor's "new evidence," and, consequently, the court's reasons remain valid even assuming Debtor were to prove liability. See B.R. at 375 (Mem. Dec. at 13). ("At best, the new evidence is pertinent to an evaluation of the 'probability of success in litigation' factor, a factor that did not predominate in the trustee's reasons for settling or this court's reasons for approving the settlement.").

In any event, "a settlement does not fall below the range of reasonableness just because it might have been successfully litigated." B.R. at 376 (Mem. Dec. at 14); see also In re Teltronics Servs., Inc., 46 B.R. 426, 428 (E.D.N.Y. 1984) (bankruptcy court may "approve the compromise even if it believes that the trustee ultimately would be successful"). A trustee need not prove the estate would lose at trial in order to get the settlement approved; to require as much would almost certainly bring settlements to an abrupt halt. See In re Teletronics, 46 B.R. at 430. Rather, the trustee need only "'establish to the reasonable satisfaction of the Referee that, all things considered, it is prudent to eliminate the risks of litigation to achieve specific certainty though admittedly [the gains] might be considerably less or more than were the case fought to the bitter end.'" Id. (quoting Florida Trailer and Equipment Co. v. Deal, 284 F.2d 567, 573 (5th

Cir. 1960)) (internal citation omitted).   Far from an abuse of discretion, it was entirely appropriate for the Bankruptcy Court to conclude the trustee had met this burden here – with or without the new evidence.  This determination will thus be upheld.

### 2.  *Lack of Due Diligence*

The Bankruptcy Court also found that Debtor's 60(b)(2) argument failed with respect to all three orders for the independent reason that the evidence Debtor presented "could have been discovered 'by the exercise of due diligence' prior to the relevant hearings: the hearing on the debtor's objection to RIASO's proof of claim on May 25, 2010, [which ultimately resulted in the order directing payment of proceeds to RIASO,] or the [settlement] approval hearing on June 30, 2010."   B.R. at 376 (Mem. Dec. at 14).   Debtor, by its own admission, was aware of Leakemariam's involvement in RIASO no later than August 17, 2009.  See B.R. at 364 (Mem. Dec. at 2) (quoting Superior Court Complaint).  Since this fact was known to Debtor over nine months before the hearings on the proof of claim and the settlement, it can hardly be characterized as "new evidence."  Leakemariam's undisclosed conflict of interest, moreover, put Debtor on notice that the loan might not be above board, leaving it plenty of opportunity to discover the information it presented in its Rule 60(b) Motion.

Appellant nevertheless argues that the trustee prevented it from investigating by refusing to abandon its Superior Court claims.  In other words, Appellant contends it could not conduct discovery as long as the Superior Court case belonged to the bankruptcy estate.   Such an argument, however, is simply too little too late.   First, as Appellee points out, "[T]his basis for relief was never presented to the bankruptcy court."  Appellee's Br. at 9.  On appeal, this Court can only evaluate the Bankruptcy Judge's decision based on the record that was before him at the time of his ruling.  Since this argument was not raised by Debtor in its Rule 60(b) briefing below,

it cannot save the case now.  In any event, even assuming this Court were to consider and accept

Appellant's position that it was hamstrung from pursuing discovery in the Superior Court case,

there was nothing to prevent it from investigating the circumstances surrounding the real-estate

loan or details about RIASO by other means.  This Court, accordingly, finds that it was not error

for the Bankruptcy Court to hold that the "new evidence" might have been discovered by the

exercise of due diligence before the hearings that preceded the three orders from which

Appellant seeks relief.

      B.  Rule 60(b)(3)

      To obtain relief from a final order under Rule 60(b)(3), the moving party must show by

"clear and convincing evidence (1) that the adverse party engaged in fraud or other misconduct

and (2) that this misconduct prevented the moving party from fully and fairly presenting his

case."  Washington v. Patlis, 916 F.2d 1036, 1039 (5th Cir. 1990) (citation omitted); see also

Crummey v. Social Sec. Admin., 2012 WL 1494926, at *2 (D.D.C. April 30, 2012) (movant

must show fraud by "clear and convincing evidence" and "establish[] that the fraud caused him

'actual prejudice' by preventing a full and fair presentation of the case") (citing Shepherd v. Am.

Broad. Cos., Inc., 62 F.3d 1469, 1477 (D.C. Cir. 1995), and Richardson v. Nat'l R.R. Passenger

Corp., 150 F.R.D. 1, 7 (D.D.C. 1993), aff'd, 49 F.3d 760 (D.C. Cir. 1995)).  The Rule is

designed to provide "relief from judgments which are unfairly obtained, not those which may be

factually incorrect."  Diaz v. Methodist Hosp., 46 F.3d 492, 496 (5th Cir. 1995).

      Appellant contends that the evidence it offered in connection with its Rule 60(b) Motion

demonstrates that RIASO engaged in fraud.  While Appellant does raise a number of questions

about the loan transaction and RIASO's status, the Bankruptcy Court found the evidence

insufficient to make the "clear and convincing" showing required by Rule 60(b)(3).  B.R. at 377-

78 (Mem. Dec. at 15-16).  In fact, the court stated that "[i]t is not apparent … how RIASO's

12

behavior constitutes fraud" as "RIASO is free to operate without a bank account, as well as to distribute proceeds of the sale from real property directly to its shareholders and creditors." B.R. at 376 (Mem. Dec. at 14 n.2). This Court need not decide whether the evidence of fraud is sufficient to obtain relief under Rule 60(b)(3), however, because Appellant failed to satisfy the second requirement – that is, that the alleged fraud resulted in "'actual prejudice' by preventing a full and fair presentation of the case." See Crummey, 2012 WL 1494926, at *2.

With respect to "actual prejudice," it is clear from the Bankruptcy Court's ruling on Debtor's 60(b) Motion that this new information would not have affected its decision to issue the orders. In its decision, the Bankruptcy Court stated that "[t]he debtor ha[d] yet to demonstrate how the new evidence would strengthen its objection to RIASO's proof of claim or its fraud claim against RIASO." B.R. at 376 (Mem. Dec. at 14 n.2). In light of this statement, Appellant cannot prove – let alone clearly and convincingly – that the court would not have approved the proof of claim and ordered payment to RIASO even if it had known the information alleged in Debtor's 60(b) Motion. Nor can it prove that the "new evidence" would have dissuaded the court from approving the settlement, as its approval "was not contingent on the availability of the source of funds or ownership information." B.R. at 378 (Mem. Dec. at 16). As the Bankruptcy Court stated, "[E]ven if RIASO did withhold [that] information from the court," the outcome of the settlement order would not have been different. Id. Such a ruling is not erroneous.

RIASO's failure to disclose the information eventually obtained by Debtor, moreover, did not prevent Monroe from fully and fairly presenting its case. Had RIASO been more forthcoming about the circumstances surrounding the refinancing, it certainly would have reduced the investigative burden on Debtor. RIASO's silence did not, however, prevent Appellant from discovering the evidence it ultimately laid out in its Motion to Vacate. As the

Court previously noted, Appellant was aware of Leakemariam's dual role well before the hearings on the approval of the settlement and RIASO's proof of claim. It was thus alerted to the suspicious nature of the transaction and could have taken steps to uncover the information it ultimately presented to the court. The court could thus alternatively have found that no clear and convincing evidence had been advanced to demonstrate any prevention of the presentation of Appellant's case.

C. Rule 60(b)(6)

Under Rule 60(b)(6), a court is permitted to vacate a final order for "any other reason that justifies relief." Because the Rule is "essentially boundless[,] … the Supreme Court has held that it applies only to 'extraordinary' situations" and should be used "sparingly." Twelve John Does v. District of Columbia, 841 F.2d 1133, 1140 (D.C. Cir. 1988) (citing Ackermann v. United States, 340 U.S. 193, 202 (1950), and Good Luck Nursing Home, Inc. v. Harris, 636 F.2d 572, 577 (D.C. Cir. 1980)). Extraordinary circumstances exist "'when a party timely presents a previously undisclosed fact so central to the litigation that it shows the initial judgment to have been manifestly unjust.'" Salazar v. District of Columbia, 633 F.3d 1110, 1121 (D.C. Cir. 2011) (quoting Good Luck Nursing Home, 636 F.2d at 577). "A 'lack of diligence,'" furthermore, "effectively precludes" relief under 60(b)(6). Salazar, 633 F.3d at 1121.

As already discussed, Appellant was on notice of suspicious circumstances surrounding the loan transaction. Had it investigated, it likely would have uncovered the "new evidence" and presented it to the court in a timely manner. This lack of diligence alone prevents Appellant from obtaining relief under Rule 60(b)(6). Id. Even if the evidence had been presented to the Bankruptcy Court before it issued the orders Appellant now seeks to vacate, the court has stated it would not have decided the matters differently. See B.R. at 376, 378 (Mem. Dec. at 14 n.2, 16). Since the evidence presented in the 60(b) Motion would not have altered the result, it can

hardly meet the higher standard of being "so central to the litigation that it shows the initial judgment to have been manifestly unjust."   See Salazar, 633 F.3d at 1121.  The Bankruptcy Court thus did not err in denying Debtor relief under Rule 60(b)(6).

## IV.    Conclusion

For the foregoing reasons, the Court will issue a contemporaneous Order affirming the Bankruptcy Court's denial of Debtor's Rule 60(b) Motion.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  May 3, 2012